Jonathan O. Hafen (6096) (jhafen@parrbrown.com)
Jeffery A. Balls (12437) (jballs@parrbrown.com)
Michael S. Lehr (16496) (mlehr@parrbrown.com)
**PARR BROWN GEE & LOVELESS, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah  84111
Telephone:  (801) 532-7840
Facsimile:  (801) 532-7750

*Attorneys for Court-Appointed Receiver Wayne Klein*

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**
**CENTRAL DIVISION**

| | |
|---|---|
| R. WAYNE KLEIN, as Receiver,<br><br>            Plaintiff,<br>      v.<br><br>JAY D. FRANDSEN, an individual, and LARRY T. HUTCHINGS, an individual,<br><br>            Defendants. | **COMPLAINT**<br><br>**(Ancillary to Case No. 2:15-cv-00828)**<br><br><br>Civil No. _____<br><br>Judge _____ |

R. Wayne Klein, the Court-Appointed Receiver of RaPower-3, LLC ("RaPower"), International Automated Systems Inc. ("IAS"), LTB1 LLC ("LTB1") their subsidiaries and affiliates,[1] and the assets of Neldon Johnson ("Johnson") and R. Gregory Shepard ("Shepard"),[2] (the "Receiver" or "Plaintiff")  in the case styled as *United States v. RaPower-3, LLC, et al.*,

---

[1] Collectively, unless stated otherwise, RaPower, IAS, LTB1, and all subsidiaries and affiliated entities are referred to herein as "Receivership Entities." The subsidiaries and affiliated entities are: Solco I, LLC ("Solco"); XSun Energy, LLC ("XSun"); Cobblestone Centre, LC ("Cobblestone"); LTB O&M, LLC; U-Check, Inc.; DCL16BLT, Inc.; DCL-16A, Inc.; N.P. Johnson Family Limited Partnership ("NPJFLP"); Solstice Enterprises, Inc. ("Solstice"); Black Night Enterprises, Inc. ("Black Night"); Starlite Holdings, Inc. ("Starlite"); Shepard Energy; and Shepard Global, Inc ("Shepard Global").
[2] Collectively, RaPower, IAS, LTB1, Shepard, and Johnson are referred to herein as "Receivership Defendants."

1

Case No. 2:15-cv-00828 (D. Utah) (Nuffer, J.) (the "Civil Enforcement Case"), hereby files this Complaint against Jay D. Frandsen ("Frandsen") and Larry T. Hutchings ("Hutchings").

## STATEMENT OF THE CASE

1. Receivership Defendants were operated as an abusive tax fraud.[3] The United States alleged, and the Court found, among other things, that the Receivership Defendants operated a massive tax fraud.[4] The whole purpose of the Receivership Entities was to enable funding for Neldon Johnson and his family.[5] Frandsen and Hutchings received $40,000.00 from Shepard. The transfers to Frandsen and Hitchings were without any legally recognized value. The Receiver seeks to recover, for the benefit of the Receivership Estate, the amounts improperly transferred to Frandsen and Hutchings.

## PARTIES, JURISDICTION AND VENUE

2. Pursuant to a Receivership Order entered on October 31, 2018 in the Civil Enforcement Case (the "Receivership Order"),[6] Plaintiff is the duly-appointed Receiver for Receivership Entities.[7]

3. Upon information and belief, Defendants Frandsen and Hutchings are residents of or are domiciled in the State of Utah.

---

[3] *See Findings of Fact and Conclusions of Law*, Civil Enforcement Case, Docket No. 467, at 1 ("FFCL"), filed Oct. 4, 2018.
[4] *Amended and Restated Judgment*, Civil Enforcement Case, Docket No. 507, filed Nov. 13, 2018; *see also* FFCL. The Receivership Defendants have filed notices of appeal, which are pending.
[5] FFCL at 128.
[6] Civil Enforcement Case, Docket No. 490. A Corrected Receivership Order, which corrected formatting errors, was entered the next day, Docket No. 491.
[7] Civil Enforcement Case, Docket No. 636. The assets of 12 of these affiliates had been frozen by the initial Receivership Order.

4. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1367, 754.

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 754, 1391(b).

## FACTS
## The Abusive Tax Scheme

6. As the Court found in the Civil Enforcement Case: "For more than ten years, the Receivership Defendants promoted an abusive tax scheme centered on purported solar energy technology featuring 'solar lenses' to customers across the United States. But the solar lenses were only the cover story for what the Receivership Defendants were really selling: unlawful tax deductions and credits."[8]

7. Receivership Defendants sold solar lenses emphasizing their purported tax benefits. Customers were told that they could "zero out" their federal income tax liability by buying enough solar lenses and claiming both a depreciation deduction and solar energy tax credit for the lenses.

8. The purported solar energy technology and solar lenses, however, did not work and could not generate energy.

9. Specifically, the Court found that the "purported solar energy technology is not now, has never been, and never will be a commercial grade solar energy system that converts sunlight into electrical power or other useful energy" and "[t]he solar lenses do not, either on

---

[8] *Memorandum Decision and Order on Receiver's Motion to Include Affiliates and Subsidiaries in Receivership*, Civil Enforcement Case, Docket No. 636 at 4, quoting FFCL at 1.

3

their own on in conjunction with other components, use solar energy to generate marketable electricity."[9]

10. Notwithstanding the fact the solar lenses and technology never worked, Receivership Defendants continued to sell solar lenses to customers emphasizing that customers would qualify for depreciation deductions and/or the solar energy tax credit.

11. Between 45,205 and 49,415 solar lenses were sold to customers.[10] Receivership Defendants' own transaction documents and testimony at trial showed that the gross receipts received by Receivership Defendants were at least $32,796,196 and possibly much more.[11]

12. These lens sales constituted a massive tax fraud.[12] None of these solar lenses ever met the necessary elements to qualify for depreciation deductions or the solar energy tax credit.

13. Indeed, "[h]undreds, if not thousands" of customer lenses were not even removed from the shipping pallets.[13]

14. Based on these facts and others, the Receivership Defendants were enjoined from promoting their abusive solar energy scheme, were ordered to disgorge their gross receipts, and were required to turn over their assets and business operations to the Receiver.[14]

15. The Court held that the "whole purpose of . . . the Receivership Entities . . . was to perpetuate a fraud to enable funding for Neldon Johnson. The same is true for other entities

---

[9] FFCL at 49.
[10] *Id*. at 14.
[11] *Id*. at 15.
[12] *Id*.
[13] *Id*. at 55-56.
[14] *Memorandum Decision and Order on Receiver's Motion to Include Affiliates and Subsidiaries in Receivership*, Civil Enforcement Case, Docket No. 636 at 4, citing *Memorandum Decision and Order Freezing Assets and to Appoint a Receiver*, Civil Enforcement Case, Docket No. 444, filed August 22, 2018.

4

Johnson created, controls, and owns . . . . Johnson has commingled funds between these entities, used their accounts to pay personal expenses, and transferred Receivership Property to and through them in an attempt to avoid creditors."[15]

16. Receivership Defendant Shepard was the self-proclaimed "Chief Director of Operations" for RaPower. His primary role was to promote the company and sell lenses.

17. Shepard was paid for his work promoting RaPower and IAS through Shepard Global.

18. Shepard's promotion and sales focused on helping customers "zero out" their federal income tax. Indeed, Shepard told customers how to complete their tax returns "properly" to claim the tax benefits purportedly associated with buying solar lenses.

19. Shepard even advised customers under audit on how to respond to the IRS to defend disallowed and lens-related depreciation deductions and solar energy tax credits.

20. Shepard knew, or had reason to know, that the statements he was making were false or fraudulent and that customers were not allowed the depreciation deduction or solar energy tax credit.[16]

21. For his role in the solar energy scheme, Shepard received at least $702,001.00 either directly or through Shepard Global.[17]

**Amounts Transferred to Defendants Frandsen and Hutchings**

22. Around March 2016, Defendants Frandsen and Hutchings received $40,000.00 from Shepard (the "Transfers").

---

[15] *Id.* citing FFCL and *Receiver's Report and Recommendation on Inclusion of Affiliates and Subsidiaries in Receivership Estate*, Civil Enforcement Case, Docket No. 581.
[16] *Id.* at 43.
[17] *Id.* at 16.

23. Frandsen and Hutchings agreed to repay Shepard the $40,000.00 plus $600.00 a month for 20 months beginning on March 23, 2016 for a total repayment of $52,000.00.

24. On information and belief, Frandsen and Hutchings did not take the Transfers in good faith and/or did not transfer anything of a reasonably equivalent value to Shepard in exchange for the Transfers.

25. At all times relevant hereto, Shepard was insolvent or had assets that were unreasonably small in relation to transactions in which he was involved.

26. Frandsen and Hutchings have not repaid the Transfers to the Receiver or Shepard.

## **FIRST CLAIM FOR RELIEF**
*(Breach of Contract)*

27. The Receiver re-alleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

28. Frandsen and Hutchings entered into a contract with Shepard.

29. Shepard gave $40,000.00 to Frandsen and Hutchings. Frandsen and Hutchings were to pay back the $40,000.00 along with 20 monthly payments of $600.00.

30. Shepard fully performed under the agreement by giving the money to Frandsen and Hutchings.

31. Frandsen and Hutchings breached the agreement by not making any payments to Shepard.

32. The Receiver was damaged by Frandsen and Hutchings' breach of the agreement in the amount of $52,000.00

## SECOND CLAIM FOR RELIEF
*(Avoidance of Fraudulent Transfers Under Utah Code Ann. §§ 25-6-5(1)(a) and 25-6-8)*

33. The Receiver re-alleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

34. Shepard was engaged in an enterprise with all of the characteristics of a fraud scheme.

35. At all relevant times hereto, Shepard had at least one creditor.

36. At all relevant times hereto, Shepard was insolvent.

37. The Transfers were paid to Frandsen and Hutchings with actual intent to hinder, delay or defraud a creditor of Shepard.

38. Pursuant to Utah Code Ann. §§ 25-6-5(1)(a) and 25-6-8, the Receiver may avoid and recover the Transfers paid to Frandsen and Hutchings.

## THIRD CLAIM FOR RELIEF
*(Avoidance of Fraudulent Transfers Under Utah Code Ann. §§ 25-6-5(1)(b) and 25-6-8)*

39. The Receiver re-alleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

40. Shepard was engaged in an enterprise that has all of the characteristics of a fraud scheme.

41. At all relevant times hereto, Shepard had at least one creditor.

42. The Transfers were paid by Shepard without receiving reasonably equivalent value in exchange for the Transfers.

43. At the time the Transfers were paid, Greg Shepard (a) was engaged or were about to be engaged in a business or transaction for which his remaining assets were unreasonably

small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as such debts became due.

44. Pursuant to Utah Code Ann. §§ 25-6-5(1)(b) and 25-6-8, the Receiver may avoid and recover the Transfers paid to Frandsen and Hutchings.

## FOURTH CLAIM FOR RELIEF
*(Avoidance of Fraudulent Transfers Under Utah Code Ann. §§ 25-6-6(1) and 25-6-8)*

45. The Receiver re-alleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

46. Shepard was engaged in a fraud scheme.

47. Shepard had at least one creditor at the time that the Transfers were made to Frandsen and Hutchings.

48. The Transfers were paid to Frandsen and Hutchings without Shepard receiving a reasonably equivalent value in exchange for the Transfers.

49. Shepard was insolvent at the time the Transfers were paid or became insolvent as a result of the Transfers or the obligation incurred.

50. Pursuant to Utah Code Ann. §§ 25-6-6(1) and 25-6-8, the Receiver may avoid and recover the Transfers to Frandsen and Hutchings.

## FIFTH CLAIM FOR RELIEF
*(Unjust Enrichment)*

51. The Receiver re-alleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

52. The Transfers were comprised of property of Shepard.

53. The Transfers conferred a benefit upon Frandsen and Hutchings.

54. Frandsen and Hutchings knowingly benefitted from the Transfers.

55. Allowing Frandsen and Hutchings to retain the Transfers would unjustly enrich them and would be inequitable.

56. Absent return of the Transfers, the Receiver will be damaged by Frandsen and Hutchings' unjust enrichment and may have no adequate remedy at law.

57. Frandsen and Hutchings must disgorge the amount of the Transfers.

## PRAYER FOR RELIEF

WHEREFORE, the Receiver prays for Judgment against Frandsen and Hutchings, jointly and severally, as follows:

A. Pursuant to the Receiver's First Claim for Relief, judgment against Frandsen and Hutchings for $52,000.00.

B. Pursuant to the Receiver's Second Claim for Relief, judgment against Frandsen and Hutchings avoiding the Transfers under Utah Code Ann. §§ 25-6-5(a)(1) and 25-6-8, and permitting Plaintiff's recovery of the value of the: (1) Transfers in the total amount of $40,000.00.

C. Pursuant to the Receiver's Third Claim for Relief, judgment against Frandsen and Hutchings avoiding the Transfers under Utah Code Ann. §§ 25-6-5(a)(2) and 25-6-8, and permitting Plaintiff's recovery of the value of the: (1) Transfers in the total amount of $40,000.00.

D. Pursuant to the Receiver's Fourth Claim for Relief, judgment against Frandsen and Hutchings avoiding the Transfers under Utah Code Ann. §§ 25-6-6(1) and 25-6-8, and

permitting Plaintiff's recovery of the value of the: (1) Transfers in the total amount of $40,000.00.

E. Pursuant to the Receiver's Fifth Claim for Relief, judgment against Frandsen and Hutchings permitting Plaintiff's recovery of the value of the: (1) Transfers in the total amount of $40,000.00; (2) imposition a constructive trust for the benefit of the receivership estate on any and all Transfers; and (3) disgorgement of the value of the Transfers.

F. Judgment for pre-judgment interest, costs, and fees, including reasonable attorney's fees, as may be allowed by law.

G. For such other and further relief as the Court deems just and proper.

DATED this 17th day of September, 2019.

                PARR BROWN GEE & LOVELESS, P.C.

                /s/ Jeffery A. Balls
                Jonathan O. Hafen
                Jeffery A. Balls
                Michael S. Lehr
                *Attorneys for R. Wayne Klein, Receiver*